**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LETICIA S.,                          ) Case No. 2:25-cv-00131-SP
                                     )
                  Plaintiff,         )
                                     )
            v.                       ) **MEMORANDUM OPINION AND**
                                     ) **ORDER**
FRANK BISIGNANO,                     )
Commissioner of Social Security      )
Administration,                      )
                                     )
                  Defendant.         )
                                     )
_____     )

**I.**

**INTRODUCTION**

On January 6, 2025, plaintiff Leticia S. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of an application for a period of disability and disability insurance benefits ("DIB").  The parties have fully briefed the matter in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision, whether the Administrative Law Judge ("ALJ") properly considered plaintiff's subjective symptom testimony.  Plaintiff's Brief ("P. Mem.") at 5-14; *see* Defendant's Brief ("D. Mem") at 3-12.

1

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered plaintiff's subjective symptom testimony.  Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 49 years old on her alleged disability onset date.  AR at 85.  Plaintiff has a twelfth-grade education and has past relevant work as a nurse assistant.  AR at 52, 70, 105, 261.

On March 2, 2022, plaintiff filed an application for a period of disability and DIB due to fibromyalgia, depression, anxiety, degenerative disc disease, high blood pressure, swollen legs, a pinched nerve in the neck, and bursitis of the shoulder.  AR at 86.  The application was denied initially and upon reconsideration, after which plaintiff filed a request for a hearing.  AR at 85-108, 110-32, 154-55.

On January 18, 2024, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ.  AR at 46-84.  The ALJ also heard testimony from William Thompson, a vocational expert.  AR at 69-79.  On April 5, 2024, the ALJ denied plaintiff's claim for benefits.  AR at 23-41.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since July 8, 2020, the alleged onset date.  AR at 26.

At step two, the ALJ found plaintiff suffered from the following severe impairments: degenerative disc disease, degenerative joint disease, fibromyalgia, hypertension, obesity, marijuana use disorder, generalized anxiety disorder, and major depressive disorder/bipolar disorder.  *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1.  *Id.*

2

The ALJ then assessed plaintiff's residual functional capacity ("RFC"), and determined plaintiff had the RFC to perform light work with the limitations that plaintiff could: lift and carry, and push and pull, 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours of an eight-hour workday with standard breaks; sit for six hours of an eight-hour workday with standard breaks; frequently stoop, climb ramps and stairs, kneel, crawl, and crouch; occasionally climb ladders, ropes, and scaffolds; occasionally balance as that term is used in the Department of Labor's Selected Characteristics of Occupations; frequently reach; understand, remember, and carry out simple tasks; make simple work-related decisions; have frequent work-related interactions with coworkers and supervisors; and have occasional work-related interaction with the general public. AR at 29.

The ALJ found, at step four, that plaintiff was unable to perform her past work as a nurse assistant. AR at 38.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including cafeteria attendant and office cleaner. AR at 39. Consequently, the ALJ determined plaintiff did not suffer from a disability as defined by the Social Security Act. AR at 40.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied. AR at 1-6. The ALJ's decision stands as the final decision of the Commissioner.

**III.**

**STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458–59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the

3

decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## **DISCUSSION**

Plaintiff claims the ALJ failed to provide clear and convincing reasons for discounting plaintiff's subjective symptom testimony. P. Mem. at 5-14. Plaintiff argues the ALJ impermissibly rejected her subjective symptom testimony solely because it was not supported by the medical evidence, and failed to identify plaintiff's specific testimony that is undermined by her treatment history. *Id.* at 8-12.

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms. In adopting SSR 16-3p, the Social Security Administration sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678, n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (citing *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, if the claimant satisfies the first step and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit his or her ability to perform work-related activities. *Id.*

In assessing intensity and persistence, the ALJ may consider: the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing 20 C.F.R. § 404.1529); SSR 16-3p at *4; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons supported by substantial evidence in the record, for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281, 1283-84.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause plaintiff's alleged symptoms. AR at 31. At the second step, because the ALJ did not find any evidence of malingering, the

5

ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. The ALJ found plaintiff's "statements concerning the intensity, persistence, and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id.*

The ALJ first reasoned that plaintiff's medical records "do not entirely support the extent of plaintiff's subjective allegations." AR at 31; *see Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (inconsistency with the medical evidence may undercut a claimant's testimony). Plaintiff argues that the ALJ merely summarizes her medical history and improperly fails to explain what particular pieces of medical evidence conflict with her testimony. P. Mem. at 9. Defendant responds by pointing to several inconsistencies between plaintiff's testimony and the medical evidence summarized by the ALJ. D. Mem. at 5-6. Despite the ALJ's extensive summary of plaintiff's medical records, the court agrees the ALJ's analysis was insufficient.

The ALJ summarized plaintiff's medical records from October 2020 through October 2023, focusing on her treatment for fibromyalgia-related pain, edema, lower back pain, and mental health concerns. *See* AR at 31-34. As defendant states, the ALJ notes several medical findings which could be construed as inconsistent with plaintiff's testimony, including full range of motion in many extremities, normal gait, intact motor strength, lack of tenderness in the spine, and largely normal mental status examinations. *See* D. Mem. at 5-6; AR at 31-34, 351-54, 359-60, 409, 438, 506, 629-30, 637-38. While the ALJ did make a single reference to a lack of support in the record for plaintiff's testimony about her fibromyalgia causing her to shake, the ALJ otherwise merely summarized plaintiff's medical records, failing to point out conflicts with plaintiff's testimony. *See* AR at 34. By itself, this is inadequate. *See Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("'providing a summary of medical evidence is not the same as providing clear and convincing *reasons* for finding the claimant's testimony not credible.'") (quoting *Brown-Hunter v. Colvin*, 806 F.3d, 487, 494 (9th Cir. 2015)). It is not the court's responsibility "to take a general finding – an unspecified conflict between

6

[plaintiff's] testimony . . . and her reports to doctors – and comb the administrative record to find specific conflicts." *Burrell*, 775 F.3d at 1138. Therefore, the ALJ's finding that plaintiff's subjective symptom testimony was not fully supported by the medical evidence is not a clear and convincing reason to discount her testimony.

Plaintiff argues the ALJ's sole reason for discounting her testimony was the lack of supporting objective medical evidence. P. Mem. at 14. Plaintiff also asserts that the ALJ did not find plaintiff's activities of daily living as a reason to discount her testimony. *Id.* at 12. In fact, the ALJ clearly contrasts plaintiff's testimony and her daily activities in his opinion. *See* AR at 30. Plaintiff also does not address or even acknowledge the ALJ's other two reasons for discounting her subjective symptom testimony, which are clearly stated in the ALJ's decision as discussed below.

In addition to lack of supporting medical evidence, the second reason the ALJ gave for discounting plaintiff's subjective symptom testimony was that she failed to seek treatment and was noncompliant with prescribed treatments. *See* AR at 31-34; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding ALJ's may consider "unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment" as a factor in evaluating a claimant's subjective testimony). The ALJ notes plaintiff declined to seek treatment for her severe pain for most of 2021. AR at 31. Moreover, the ALJ notes several instances where plaintiff stated she had not seen the pain management specialist to whom she was referred, even after being told to do so. AR at 32-33, 716-17, 723-24, 726, 733-34, 736, 742, 746. At one point, plaintiff's physician even indicated she would not prescribe more pain medication to plaintiff unless she follows up with the pain management specialist. AR at 734. The ALJ also pointed to records that plaintiff failed to follow up on her reference to physical therapy. AR at 32-33, 745. Finally, the ALJ also referenced plaintiff's noncompliance with her psychiatric medication. AR at 34, 747. The ALJ pointed to specific evidence of a pattern of plaintiff's failure to seek treatment and noncompliance with prescribed treatments.

Therefore, the ALJ's second reason for discounting plaintiff's subjective symptom testimony was clear and convincing and supported by substantial evidence.

The third reason given by the ALJ for discounting plaintiff's subjective symptom testimony was that her treatment was routine and conservative. AR at 31, 33-34; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation modified).  In particular, the ALJ highlighted plaintiff's treatment with only Tylenol, Motrin, and heat following an October 2020 emergency visit, her conservative mental health treatment, her lack of specific treatment for neck pain, and her denial of the use of pain medications.  AR at 31, 33-34.

As an initial matter, the court notes that the ALJ's description of plaintiff's mental health treatment as being conservative is inaccurate.  *See* AR at 33.  Plaintiff was treated with a number of psychotropic and related medications, including Cymbalta, Buspirone, Gabapentin, Prozac, Latuda, and Benztropine Mesylate.  AR at 501, 507, 559, 628.  "The Ninth Circuit and district courts alike have recognized that prescription of psychiatric medication for mental health impairments . . . is not indicative of conservative treatment." *Joseph S. v. O'Malley*, 2024 WL 418632, at *13 (S.D. Cal. Feb. 5, 2024) (collecting cases); *see also Drawn v. Berryhill*, 728 F. App'x 637, 642 (9th Cir. 2018).

Nonetheless, the other treatments the ALJ describes do appear to be conservative. Plaintiff was discharged from UCLA Harbor Medical Center in October 2020 after treatment for neck and shoulder pain with recommendations to take Tylenol and Motrin and use heat to alleviate her pain.  *See* AR at 31, 408-09.  Plaintiff's medical records also indicate that although plaintiff has alleged neck pain for quite some time, "she does not take pain medication for this issue." *See* AR at 450.  Moreover, the ALJ notes that plaintiff indicated in her hearing testimony that she does not take pain medication apart from Gabapentin.  AR at 59-60.  Plaintiff's medical records show that although she received some narcotic pain relievers during hospital stays, typically her treatment consisted of over-the-counter medications such as ibuprofen and Tylenol.  *Compare* AR

8

at 409, 411, 438, 454 *with* AR at 381, 450, 483, 517, 561, 649, 697, 700, 716, 763, 786. Plaintiff's treatment of her pain with over-the-counter pain relievers appears to be conservative. Accordingly, the ALJ's third reason for discounting plaintiff's subjective symptom testimony – plaintiff's conservative and routine treatment – was clear and convincing and supported by substantial evidence.

Lastly, the ALJ reasoned plaintiff's subjective symptom testimony should be discounted because it was inconsistent with her reported activities of daily living. AR at 30. The ALJ noted plaintiff alleged she had difficulty with "lifting more than 10 pounds, squatting, bending, standing, reaching, walking, sitting, stair climbing, completing tasks, concentrating, understanding, following instructions, using her hands, getting along with others and her memory." AR at 30, 293. Additionally, plaintiff testified that she cannot stand very long, pick up a cast-iron skillet, and that wearing a bra is painful. AR at 30, 58, 62. The ALJ contrasts this testimony with plaintiff's Adult Function Report in which she stated she was "able to do laundry, drive, go out alone, shop in stores, by phone, and by computer, manage money, and crochet." AR at 30, 290-92. While the ALJ does not explicitly state that these activities are inconsistent with plaintiff's testimony, the ALJ's use of the word "yet" indicates that plaintiff's ability to shop, drive, crochet, and go in public alone show plaintiff is able to lift, stand, walk, sit, use her hands, and concentrate to some degree. *See Brown-Hunter*, 806 F.3d at 494 (the court may draw "reasonable inferences" from the ALJ's summary of the evidence). Plaintiff's ability to perform tasks such as driving and shopping in stores is inconsistent with an inability to bend, reach, walk, sit, concentrate or use one's memory. Therefore, the inconsistency between plaintiff's testimony and her activities of daily living also constitutes a clear and convincing reason to discount her subjective symptom testimony.

In sum, although the ALJ did not adequately explain the conflicts between the medical evidence and plaintiff's testimony, he cited at least three other clear and convincing reasons supported by substantial evidence for discounting plaintiff's subjective symptom testimony. This is legally sufficient.

## V.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the action with prejudice.


Dated: <u>March 30, 2026</u>

SHERI PYM
United States Magistrate Judge